IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| _____ | ) | |
| TOTAL BENEFITS PLANNING | ) | |
| AGENCY, INC. *et al.* | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | Case No. 1:05CV519 |
| v. | ) | District Judge Watson |
| | ) | Magistrate Judge Hogan |
| ANTHEM BLUE CROSS AND | ) | |
| BLUE SHIELD, *et al.* | ) | |
| | ) | |
|     Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Defendants Anthem Blue Cross and Blue Shield, Anthem Life Insurance

Company, Inc., Anthem Health Plans of Kentucky, Inc. and Anthem Insurance Company,

Inc. (collectively "Anthem") respectfully submit this Memorandum in Support of their

Motion to Dismiss plaintiffs' Complaint.

**I.      PRELIMINARY STATEMENT**

By this action, plaintiffs – an insurance agency and several agents working in that

agency – challenge Anthem's June, 2005 decision to sever the parties' business

relationship.  The plaintiffs accuse Anthem of various alleged misdeeds in connection

with that decision (libel and defamation, tortious interference with contract, civil

conspiracy, breach of contract, etc.), but this Court's jurisdiction over the matter is *solely*

predicated upon plaintiffs' contention, in Count I of the Complaint, that  Anthem's

conduct constitutes a violation of the federal antitrust laws, 15 U.S.C. §1.

1

While Anthem's decision to sever its relationship with plaintiffs was a legitimate and proper business judgment, the factual inquiry required to demonstrate that plaintiffs' state law claims lack merit is not permitted at this stage of the proceedings.  Fortunately, however, no such inquiry is required to dispose of plaintiffs' antitrust claim; as explained below, plaintiffs' antitrust claim is deficient as a matter of law for numerous independently-sufficient reasons.  Accordingly, Anthem requests that plaintiffs' antitrust claim be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and that upon dismissal of the claim, that this Court decline to exercise jurisdiction over plaintiffs' supplemental state law claims.

Specifically, plaintiffs' antitrust claim (Count I) fails because plaintiffs have not satisfied the pleading requirements for an antitrust claim set forth by the Sixth Circuit in *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.,* 854 F.2d 802 (6th Cir. 1988).  As the Sixth Circuit has explained, plaintiffs must plead, in more than vague and conclusory terms, that "the defendants contracted, combined or conspired among each other," and that "the combination or conspiracy produced adverse, anticompetitive effects within relevant product and geographic markets." *Id.* at 805.[1]  Plaintiffs' Complaint does not satisfy *any* of these requirements, and thus clearly fails to state a claim for relief.

First, plaintiffs' Complaint fails to adequately identify the product and geographic markets the plaintiffs contend are at issue in this case.  This failure, standing alone, is fatal to their claim.  *See, e.g., Cupp v. Alberto-Culver USA, Inc.,* 310 F.Supp.2d 963, 969-71 (W.D. Tenn. 2004) (dismissing antitrust claim where plaintiff failed adequately to

---

[1] The remaining elements of the claim require an antitrust plaintiff to plead "that the objects of and conduct pursuant to that contract or conspiracy were illegal and that the plaintiff was injured as a proximate result of the conspiracy." *Crane & Shovel,* 854 F.2d at 805.

2

plead the relevant product and geographic markets).

Second, plaintiffs' Complaint also fails as a matter of law because plaintiffs have pled harm to themselves, not harm to competition.  *See* Plaintiffs' Complaint at Paragraph 18(b) (hereinafter "Comp. at ¶__") ("*Plaintiffs* have been restrained in *their* ability to make said services readily and fully available to the public) (emphasis added). Because the antitrust laws are intended for "the protection of competition, not competitors," *Brown Shoe Co. v. United States,* 370 U.S. 294, 320 (1962), it is well recognized that an antitrust claim that fails to plead harm to *competition* should be dismissed.  *Crane & Shovel,* 854 F.2d at 807 ("A complaint charging a restraint of trade . . . must allege anticompetitive effect at the interbrand level to survive a Rule 12(b)(6) motion").

Third, plaintiffs' Complaint fails as a matter of law because it does not adequately allege a "contract, combination or conspiracy."  *See, e.g., The Estate Construction Company v. Miller & Smith Holding Company, Inc.,* 14 F.3d 213, 221 (4th Cir. 1994) (dismissing antitrust claim where plaintiffs' Complaint  failed to "provide any details of the time, place and alleged effect of the conspiracy").  Even the most generous interpretation of plaintiffs' allegations yields no details regarding how, when, or among whom the alleged conspiracy was created, thus rendering plaintiffs' allegations fatally defective.  *Re/Max Intern., Inc. v. Smythe, Cramer Co.* 265 F.Supp.2d 882, 896 (N.D. Ohio, 2003) ("A plaintiff's bare allegation of conspiracy is insufficient to sustain an antitrust claim;" dismissing antitrust claim where plaintiff failed adequately to allege the "participants, time, place and effect of the alleged conspiracy").

Finally, even if plaintiffs *had* satisfied the pleading requirements of *Crane & Shovel* – and they clearly have not -- the conduct alleged in plaintiffs' Complaint would still fail as a matter of law because it is *exempt* under the McCarran-Ferguson Act (15 U.S.C. §§1012, 1013) ("McCarran").[2] Obviously aware of the impediment to their case imposed by McCarran, plaintiffs allege that Anthem's conduct constitutes a McCarran "boycott." However, not only does this conclusory allegation carry no weight, *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir. 1986),[3] but the relevant case law clearly demonstrates that plaintiffs are mistaken: The termination of an insurance agent for its alleged failure to comply with an insurer's corporate policies does *not* constitute a McCarran boycott. *See, e.g., Card v. National Life Insurance Co.,* 603 F.2d 828 (10th Cir. 1979) (termination of insurance agent held not to constitute a McCarran boycott); *Black v. Nationwide Mutual Insurance Co.,* 429 F. Supp. 458 (W.D. Pa. 1977) (termination of agent held not to constitute a McCarran boycott), *aff'd* 571 F.2d 571 (3rd Cir. 1978); *Blackley v. Farmers Insurance Group,* 1976-2 Trade Cas. (CCH) ¶61,061 (D. Utah) (agent termination held not to be a McCarran boycott).

Accordingly, for all of these reasons, as more fully explained below, Anthem respectfully requests that this Court dismiss plaintiffs' antitrust claim (Count I). In addition, upon dismissal of the antitrust claim, Anthem further requests that this Court decline to exercise jurisdiction over plaintiffs' supplemental state law claims and instead

---

[2] The McCarran-Ferguson Act exempts "the business of insurance" from the antitrust laws, provided that the conduct is "subject to state regulation" and does not constitute an act of "boycott, coercion or intimidation." 15 U.S.C. §§1012, 1013.

[3] Plaintiffs' colorful assertion that defendants have "blacklisted" them (Comp. ¶17(d)) adds nothing to the Complaint, as it is also a mere conclusion lacking any factual underpinnings. *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir. 1986) ("It is not enough for a complaint . . . to contain mere conclusory allegations . . . Some factual basis must be set forth in the pleadings.")

4

dismiss the action in its entirety.  *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1255 (6th Cir. 1998) ("After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims"); *Taylor v. First American Bank-Wayne,* 973 F.2d 1284, 1287 (6th Cir. 1992) (affirming decision declining to exercise supplemental jurisdiction over state law claims after dismissal of federal claims).

## II.  PLAINTIFFS' ALLEGATIONS[4]

Plaintiffs are an insurance agency and the insurance agents working in that agency.  Comp., ¶6-10.  Prior to the termination of their relationships with Anthem in June of 2005, plaintiffs sold Anthem health and life insurance to consumers on behalf of Anthem, on terms and conditions authorized by Anthem.  Comp. ¶12.  Plaintiffs contend that Anthem's severance of the parties' relationship was unlawful, in violation of the federal antitrust laws.  Comp., ¶¶11-18.

According to the Complaint, the conduct leading to plaintiffs' termination began in 2004, when plaintiffs commenced marketing Anthem policies to consumers pursuant to a program that plaintiffs describe as the "Total Benefits Strategy."  Comp. ¶13.  Plaintiffs embarked on this course of action without Anthem's prior approval and, upon learning of plaintiffs' actions, Anthem objected.  Comp. ¶15.  Specifically, as plaintiffs allege, in September of 2004 Anthem apprised plaintiffs that their "Total Benefits Strategy" was inimical to Anthem's interests, and that it would not permit Anthem agents to engage in such practices.  Comp. ¶15.

Plaintiffs "continued to promote the Total Benefits Strategy following [the September 2004] meeting" with Anthem.  Comp. ¶15.  Consequently, in June of this year

---

[4] Anthem accepts the well-pled allegations of plaintiffs' Complaint for purposes of this motion.

Anthem severed its relationship with plaintiffs. Comp. ¶12. This action followed, in which plaintiffs accuse Anthem of, among other things, a federal antitrust violation.

### III. ARGUMENT

#### A. The Applicable Legal Standard

It is well-settled that a plaintiff's Complaint "must contain either direct or inferential allegations respecting all the material elements" of a claim. *Scheid v.Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir, 1988). Where a plaintiff fails to satisfy this requirement, dismissal of the Complaint pursuant to Rule 12(b)(6) is clearly warranted. *Valley Products Co. v. Landmark,* 128 F.3d 398, 400 (6th Cir. 1997) (affirming District Court dismissal of antitrust claim for failure to state a claim); *Cupp v. Alberto-Culver USA, Inc.,* 310 F.Supp.2d 963, 969-74 (W.D. Tenn. 2004) (dismissing antitrust claim where plaintiff failed adequately to plead the relevant product and geographic markets).

It is equally well-settled that a plaintiff cannot satisfy its pleading obligations by asserting mere legal conclusions; to avoid dismissal a plaintiff must allege *facts* supporting its allegations. *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.,* 854 F.2d 802, 805 (6th Cir. 1988) ("The essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal of a complaint on a defendant's 12(b)(6) motion"); *Foundation for Interior Design Educ. Research v. Savannah College of Art & Design,* 244 F.3d 521, 530 (6th Cir. 2001) (The elements of an antitrust claim "must be alleged in more than vague and conclusory terms to prevent dismissal . . . the price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and

6

burdensome"). Moreover, when these requirements are not met, "the cost of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery." *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984).

Applying these well-recognized principles to plaintiffs' Complaint, it is abundantly clear that plaintiffs' antitrust claim (Count I) fails as a matter of law and therefore should therefore be dismissed pursuant to Rule 12(b)(6).

**B.** **Plaintiff's Antitrust Claim Fails as a Matter of Law**

### 1. Plaintiffs' Claim Fails to Satisfy The Sixth Circuit's Pleading Requirements for a Section One Sherman Act Antitrust Claim

The Sixth Circuit has clearly established a plaintiff's pleading obligations under Section One of the Sherman Act (15 U.S.C. §1.). Specifically, to properly state a claim, an antitrust plaintiff must allege facts demonstrating that "defendants contracted, combined or conspired among each other, that the combination or conspiracy produced adverse, anticompetitive effects within relevant product and geographic markets, that the objects of and conduct pursuant to that contract or conspiracy were illegal and that the plaintiff was injured as a proximate result of that conspiracy." *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.,* 854 F.2d 802, 805 (6th Cir. 1988). The plaintiffs' Complaint clearly fails to measure up to this standard.

### a. Plaintiffs Have Failed to Plead Adverse, Anticompetitive Effects Within A Relevant Product and Geographic Market

Perhaps the most glaring deficiency in plaintiffs' Complaint, but by no means the only one, concerns the plaintiff's failure to plead an anticompetitive effect within the relevant product and geographic market -- an essential requirement for maintaining an

antitrust claim.  *Stratmore v. Goodbody,* 866 F.2d 189, 194 (6th Cir. 1989) ("The starting point [in alleging a Section One violation] is to identify the relevant product and geographic markets").  As the Supreme Court has repeatedly acknowledged, identification of the relevant product and geographic markets in a plaintiff's Complaint is essential because it "enables the court to assess . . . what the area of competition is, and whether the alleged unlawful acts have anticompetitive effects in that market."  *See, e.g., Brown Shoe Co. v. United States,* 370 U.S. 294, 324 (1962).

Here, it is abundantly clear that plaintiffs' Complaint does not satisfy this requirement:  A) It fails to adequately identify the relevant product and geographic markets; B) it fails to identify the participants in that market (*i.e.,* the entities with whom either plaintiffs or Anthem compete); and C) it fails to identify the market or markets that plaintiffs contend were allegedly restrained by defendants' conduct.  Instead, the plaintiffs merely allege that they and defendants are engaged in "the business of providing Health Insurance and/or Life Insurance Coverage," and that they engage in this business "within the various states of the United States of America."  Comp. ¶11.  These vague and conclusory allegations are plainly insufficient, since, for example, it is readily apparent that health insurance and life insurance are *not* in the same product market (*i.e.,* one obviously cannot purchase life insurance as an adequate substitute for health insurance).  *American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.,*  185 F.3d 606, 622 (6th Cir. 1999) ("The relevant market includes those products or services that are reasonably interchangeable with, as well as identical to, defendant's products").  In short, plaintiffs' Complaint fails to even come close to satisfying this necessary pleading requirement, and should be dismissed on this

8

basis alone. *Cupp v. Alberto-Culver USA, Inc.,* 310 F.Supp.2d 963, 969-71 (W.D. Tenn. 2004) (dismissing antitrust claim where plaintiff failed adequately to plead the relevant product and geographic markets); *Health First, Inc. v. Bronson Methodist Hospital,* 1990-2 Trade Cas. (CCH) ¶69,200 (W.D. Mich. 1990) ("The Amended Complaint contains no allegations that would establish the market share of [defendant] or its competitors in the relevant geographic market. Furthermore, the plaintiffs have not alleged facts from which one could infer that [defendant] has a substantial percentage of the hospital services market in a carefully defined [geographic] market. Thus, this allegation on the part of plaintiffs is a mere conclusion and is insufficient to withstand a motion to dismiss.")

By failing to identify the markets allegedly restrained, and the competitors in those markets, plaintiffs provide the Court with no possible manner of assessing whether defendants' alleged conduct has caused adverse competitive effects in such markets. More significantly at this stage of the proceeding, plaintiffs have failed to even allege such harm. This, of course, constitutes still another proper basis for dismissal. *Crane & Shovel,* 854 F.2d at 807 ("A complaint charging a restraint of trade . . . must allege anticompetitive effect at the interbrand level to survive a Rule 12(b)(6) motion"); *Dunn & Mavis, Inc. v. Nu-Car Driveway,* 691 F.2d 241, 245 (6th Cir. 1982) ("Since the Complaint does not allege facts suggesting that [defendant's] refusal to deal had any significant anti-competitive effect on the market, there is no rule of reason case alleged"); *Ace Beer Distrib., Inc. v. Kohn, Inc.,* 318 F.2d 283, 287 (6th Cir.) (an adverse effect on a plaintiff's business is insufficient to establish an anticompetitive effect, absent proof that such adverse effect also impairs competition in the marketplace as a whole), *cert. denied,*

9

375 U.S. 922 (1963); *Re/Max Intern., Inc. v. Smythe, Cramer Co.* 265 F.Supp.2d 882, 896, 902 (N.D. Ohio, 2003) (dismissing antitrust claim because plaintiff "does not sufficiently allege anticompetitive effects or injury to the public").

Indeed, the courts of this Circuit have not hesitated to dismiss similarly-deficient antitrust claims on the same grounds.  For example, in *Cupp v. Alberto-Culver USA, Inc.,* 310 F.Supp.2d 963 (W.D. Tenn. 2004), the plaintiff alleged that a decision by a hair care product manufacturer to cease doing business with the plaintiff violated the antitrust laws.  Upon examining the plaintiff's allegations, the Court noted that "it is clear that many brands and suppliers of hair care products exist. . . . Without a more specific definition and accounting of the brands and suppliers to be included in the relevant market, the Court cannot determine the boundaries of the market."  *Id.* at 971.  Lacking this critical information, the Court could not assess whether harm to competition generally, as opposed to mere harm to the plaintiff, had even been alleged, and therefore held that plaintiff's allegations "fail[ed] to state a civil antitrust complaint."  *Id.* at 972; *Havoco of America, Ltd. V. Shell Oil Co.,* 626 F.2d 549, 554 (7th Cir. 1980) (The absence of a sufficient allegation of anticompetititive effects in a Sherman Act complaint is *fatal* to the existence of the cause of action") (emphasis added).

Here, plaintiffs' Complaint suffers from the very same fatal infirmity as the complaint in *Cupp*.  Plaintiffs' Complaint focuses on the harm *they have allegedly suffered* as result of Anthem's decision to terminate the relationship*, not harm to competition generally in the markets in which they compete.  *See* Comp. ¶18 ("Plaintiffs have suffered a substantial loss of business reputation, opportunity and income"); Comp. ¶18(b) ("Plaintiffs have been restrained in their ability to make said services readily and

fully available to the public"). These allegations are plainly insufficient as a matter of law to satisfy plaintiffs' pleading obligations. *Crane & Shovel,* 854 F.2d at 807; *Dunn & Mavis,* 691 F.2d at 245; *Ace Beer,* 318 F.2d at 287.

Moreover, plaintiffs' failure to plead *facts* suggesting harm to competition is likely a calculated one, since facts regarding the nature of the market, if pled, would have demonstrated that Anthem's decision to sever the parties' relationship could not possibly have any effect on the state of competition.[5] Indeed, while not necessary to resolve this motion, Anthem notes that, prior to their termination, plaintiffs constituted only a handful of more than a *thousand* Anthem agents in the area, competing not only with all of Anthem's agents, but with all of the insurance agents of Anthem's many competitors as well.[6] Accordingly, the elimination of a small group of Anthem agents from the market clearly has no competitive effect on *competition* in those markets, only upon plaintiffs. In such circumstances, an antitrust claim fails as a matter of law. *See, e.g.*, *Ace Beer Distrib., Inc. v. Kohn, Inc.,* 318 F.2d 283, 287 (6th Cir.) (an adverse effect on a plaintiff's business is insufficient to establish an anticompetitive effect absent proof that such adverse effect also impairs competition in the marketplace as a whole), *cert. denied,* 375 U.S. 922 (1963); *Re/Max Intern., Inc. v. Smythe, Cramer Co.* 265 F.Supp.2d 882, 896, 902 (N.D. Ohio, 2003) (dismissing antitrust claim because plaintiff "does not sufficiently allege anticompetitive effects or injury to the public"). *See also Brown Shoe Co. v. United States,* 370 U.S. 294, 320 (1962) (the antitrust laws are designed for "the

---

[5] The omission of an essential fact in a complaint strongly implies its nonexistence. *McGregor v. Industrial Excess Landfill, Inc.,* 856 F.2d 39, 42-43 (6th Cir. 1988).

[6] Plaintiffs avoidance of any allegations about the *interbrand* insurance markets (*i.e.,* the markets in which Anthem competes) is also telling, since Anthem's small market share in these markets makes clear that the termination of a few of one insurer's agents cannot possibly have a competitive effect on the market.

protection of competition, not competitors").

Thus, given that plaintiffs' Complaint fails to allege *either* the relevant product and geographic markets *or* that plaintiffs' termination had *any* competitive effect on *any* relevant market -- where *both* elements are required to state a claim -- plaintiffs' Complaint is unquestionably insufficient and should be dismissed.

### b. Plaintiffs Have Not Adequately Pled Conspiracy

Plaintiffs' antitrust claim also fails for the independently sufficient reason that they do not adequately allege facts supporting the existence of a "combination or conspiracy" among defendants. *See, e.g., The Estate Construction Company v. Miller & Smith Holding Company, Inc.,* 14 F.3d 213, 221 (4th Cir. 1994) (dismissing antitrust claim where plaintiffs "fail[ed] to provide any factual support for their allegations that a conspiracy existed. The Complaint contains absolutely no allegations regarding communications, meetings or other means through which one might infer the existence of a conspiracy. Nor does it provide any 'details of the time, place and alleged effect of the conspiracy'"); *Commonwealth of Pennsylvania v. Pepsico, Inc.*, 836 F.2d 173, 181 (3rd Cir. 1988) (dismissing antitrust claim where plaintiff "did not allege any meetings between [defendants], any communications between them, or any other means by which their alleged conspiracy came about").

Here, plaintiffs' Complaint contains no *factual allegations* concerning when or where the alleged conspiracy was formed, how it was formed or even who the alleged

12

conspirators are. [7] Instead, plaintiffs allege only that sometime after September of 2004 "defendants and co-conspirators engaged in a combination and conspiracy in unreasonable restraint of trade." Comp. ¶16. This conclusory allegation is plainly insufficient, thus providing a further basis for dismissal of plaintiffs' antitrust claim. *See Re/Max Intern., Inc. v. Smythe, Cramer Co.* 265 F.Supp.2d 882, 896 (N.D. Ohio, 2003) ("A plaintiff's bare allegation of conspiracy is insufficient to sustain an antitrust claim;" dismissing antitrust claim where plaintiff failed adequately to allege facts detailing the "participants, time, place and effect of the alleged conspiracy"); *The Estate Construction Company,* 14 F.3d at 221; *Commonwealth of Pennsylvania v. Pepsico,* 836 F.2d at 181.

Moreover, defendants have no identifiable motive to conspire, given that Anthem had a contractual right to terminate the parties' relationship "without cause" and Cornerstone does not even compete with plaintiffs.[8] In similar circumstances, the courts have had no difficulty holding that a plaintiff's conspiracy allegations were plainly inadequate to state a claim. *See, e.g., Asa Accugrade, Inc. v. American Numismatic Ass'n,* 370 F.Supp.2d 213, 216, fn.4 (D.D.C. 2005) ("The Complaint offers no reason, and none is obvious, why [defendants] would enter into such an agreement when, presumably, they have nothing to gain from an illegal conspiracy to restrain trade or to create a monopoly, as they are not even competitors of the plaintiff;" dismissing antitrust claim for failure to adequately plead conspiracy).

---

[7] Plaintiffs do allege that Anthem's decision to terminate plaintiffs "was in the best interests of" defendant Cornerstone (Comp. ¶15), but this allegation is far removed from an allegation that Cornerstone and Anthem conspired, and if so, when and where the alleged conspiracy was hatched.
[8] Glaringly absent from plaintiffs' Complaint is an allegation that they compete with Cornerstone, and in fact they do not. Because Cornerstone acts as a *wholesale* agent for Anthem, providing services to *retail* agents like plaintiffs, Anthem's decision to terminate plaintiffs has no competitive effect on Cornerstone, and undercuts any claim of motive on the part of Cornerstone to participate in the alleged "conspiracy."

Finally, if the participants in plaintiffs' alleged conspiracy are intended to be limited to the Anthem defendants – a plausible conclusion given that the Complaint provides no allegations concerning how, when or why Cornerstone allegedly "joined" the conspiracy and Cornerstone played no role in terminating plaintiffs -- plaintiffs' Complaint would fail for the additional reason that a conspiracy of Anthem entities alone does not constitute the "plurality of actors imperative for [an antitrust] conspiracy." *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 769 (1984).

As the Sixth Circuit has expressly held, where, as here, the defendants are ultimately controlled by the same parent entity, the necessary "plurality of actors" required under *Copperweld* is absent. *Guzowski v. Hartman,* 969 F.2d 211, 214 (6th Cir. 1992) (affirming dismissal of antitrust conspiracy claim where affiliated entities were ultimately a "single economic unit serving a common interest"), *cert. denied,* 506 U.S. 1053 (1993). *See also Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.,* 772 F.2d 214, 216 (6th Cir. 1985) (affirming dismissal of antitrust conspiracy claim where alleged conspirators were a parent corporation and its wholly-owned subsidiary)*.* Thus, because the Anthem entities all share the same corporate parent they are legally incapable of conspiracy, and plaintiffs' antitrust claim therefore fails on this basis as well.

### 2. **Plaintiffs' Antitrust Claim Also Fails as a Matter of Law Because the Conduct Alleged is Exempt under the McCarran-Ferguson Act**

Finally, even if plaintiffs' *could have* adequately pled an antitrust claim (a virtual impossibility), the conduct alleged would *still* fail as a matter of law because it constitutes *exempt* activity under the McCarran-Ferguson Act. 15 U.S.C. §§1012(b), 1013(b) ("McCarran").

14

McCarran exempts from the federal antitrust laws conduct (1) that constitutes "the business of insurance" (2) to the extent such conduct is "regulated by State law," provided that (3) it is not an "agreement to boycott, coerce or intimidate, or an act of boycott, coercion or intimidation." *Id.* While plaintiffs seek to avoid the implications of McCarran by inserting a conclusory allegation in their Complaint that the conduct alleged constitutes "a McCarran boycott and/or coercion" (Comp. at ¶18), the applicable case law amply demonstrates that plaintiffs are mistaken.[9]

Indeed, numerous cases have held that an insurer's decision to terminate its relationship with an agent, for any number of reasons, is McCarran exempt conduct. *See, e.g., Card v. National Life Insurance Co.,* 603 F.2d 828 (10th Cir. 1979) (termination of insurance agent held not to constitute a McCarran boycott); *Black v. Nationwide Mutual Insurance Co.,* 429 F. Supp. 458 (W.D. Pa. 1977) (termination of agent held not to constitute a McCarran boycott), *aff'd* 571 F.2d 571 (3rd Cir. 1978); *Blackley v. Farmers Insurance Group,* 1976-2 Trade Cas. (CCH) ¶61.061 (D. Utah) (agent termination held not to be a McCarran boycott); *Hopping v. Standard Life Insurance Co.,* 1984-1 Trade Cas. (CCH) ¶65,814 (N.D. Miss. 1984) (termination of agent held not to be a McCarran boycott); *Gribbin v. Southern Farm Bureau Life Insurance Co.,* 1984-1 Trade Cas. (CCH) ¶798 (W.D. La. 1984) (termination of agent held to be McCarran protected conduct).

*Blackley v. Farmers Insurance Group,* 1976-2 Trade Cas. (CCH) ¶61,061 (D. Utah), is quite instructive on this issue. There, Farmers Insurance prohibited its agents from representing insurers other than Farmers. Notwithstanding this policy, plaintiff

_____

[9] Notably, plaintiffs do *not* allege that the conduct described in the Complaint fails to comply with the "business of insurance" and "state regulation" prongs of the McCarran exemption.

15

engaged in transactions on behalf of other insurers, drawing complaints from other Farmers' agents.  After Farmers' investigation confirmed that plaintiff was indeed writing outside business, and the plaintiff ignored Farmers' subsequent warnings that it faced termination if it did not immediately cease the practice, Farmers terminated plaintiff's agent appointment.  *Id.* at ¶61,061.

In response, the terminated agent filed an antitrust action against Farmers, alleging that Farmers' demand that it cease writing outside business constituted "coercion and intimidation," and that Farmers' termination decision constituted a McCarran "boycott."  However, after carefully considering plaintiff's arguments, the Court, rejected each of them, holding as follows:

> What plaintiff chooses to label as acts of coercion and intimidation consisted of efforts by defendants to enforce [the parties' contract].  Plaintiff was told to comply with paragraph B-1 or else be terminated as a Farmers agent.  In that context one might say he was subject to demands, ultimatums, threats, pressure and so forth.  While these constitute the stuff of which coercion and intimidation are made, their legality hinges on the lawfulness of the object or contract upon which they are undertaken.  Thus the issue before the court is whether paragraph B-1 constitutes an agreement or act of boycott.
>
> **The Court finds nothing in the operation of Farmers that contemplates a "boycott"** . . . **Plaintiff agreed to abide by paragraph B-1 and was terminated for not doing so**; his complaint is that he cannot be an independent agent while representing Farmers.  **He alleges in classic boycott terms that Farmers demanded that he not represent other insurance companies except as to business Farmers did not want.  But such analysis fails to account for the fact that while paragraph B-1 is a restraint on Farmers' agents, it is not a restraint on trade.  . . . Plaintiffs' clients are not subject to any boycott.  They are not compelled to buy Farmers' policies. They are free to shop around and buy other insurance** . . .

*Id.* (emphasis added).[10]

---

[10] Quite significantly, the Court in *Blackley* further noted that, like here, plaintiff's claim also failed because Farmers' conduct "d[id] not have the effect of closing market access to its competitors or any other anticompetitive effect." *Id.*

Similarly, in *Black v. Nationwide Mutual Insurance Co.,* 429 F. Supp. 458 (W.D. Pa. 1977) *aff'd* 571 F.2d 571 (3rd Cir. 1978), the Court held that an insurer's decision to enforce its corporate policies – and to terminate an agent that refused to abide by them – was McCarran-protected conduct.  In *Black,* the Court began its analysis by noting that the first two prongs of McCarran had been easily met.  First, with respect to the "business of insurance" requirement, the Court stated "We have no doubt that plaintiff's relationship with defendants was so closely connected to the 'core of the insurance business,' the relationship between insurer and insured, the type of policy which could be issued, its reliability, the interpretation and enforcement as to come within the scope of the business of insurance."  *Id.* at 463.  Next, with respect to whether the conduct was "subject to state regulation," the Court noted: "Pennsylvania has an extensive and general system of statutory regulation of the insurance business," *id.,* and therefore this requirement was also easily satisfied.

Finally turning to plaintiff's claim of "boycott," the *Black* Court, like the *Blackley* court before it, held that no McCarran boycott exists when an insurer severs its relationship with an agent based upon the agent's refusal to abide by the insurer's corporate policies.  In reaching that conclusion, the court held:

> It is the effect upon free competition in the business of insurance with which we are concerned, and **there is nothing in the evidentiary material supplied in the present case to show that any actions of the defendant companies affected their competitors by excluding them from the sale of insurance to any segment of the public.  The restrictions on sales which they imposed affected only themselves or agents who wished to write insurance for them.  They only diminished their own sales, and the agents, including plaintiff, who wished to write for other companies were free to leave defendants' agency and write for others**. . . .
>
> **We find the acts complained of not to constitute a boycott, intimidation or restriction in restraint of trade.  To do otherwise would**

17

> **constitute a federal invasion into the state system of regulation of insurance, which the McCarran-Ferguson Act forbids**.

*Id.* at 461-62 (emphasis added).

The circumstances here are indistinguishable from those in *Blackley* and *Black.* Here, as there, an agent was terminated for refusing to abide by the insurer's corporate policies.  In response to the termination, the agent filed a federal antitrust claim, alleging that the termination decision constituted a McCarran boycott.  However, as the courts in *Blackley* and *Black* held, the termination of an agent for failing to abide by its agent contract is simply *not* a McCarran boycott, and thus plaintiffs' antitrust claim is exempt under McCarran.  *See also Card,* 603 F.2d at 834 (where all of the alleged conspirators were either a part of National Life Insurance or a National Life general agent, the decision not to do business with an agent that failed to abide by National Life's corporate policies did not constitute a McCarran boycott).[11]

### C. The Court Should Decline to Exercise Jurisdiction Over Plaintiffs' Pendant State Law Claims

As demonstrated above, plaintiffs' antitrust claim should be dismissed, on numerous bases, for failure to state a cause of action against Anthem.  As the Sixth Circuit has noted, "After a Rule 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims." *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1255 (6th Cir. 1998).  *Accord Taylor v. First American Bank-Wayne,* 973 F.2d 1284, 1287 (6th Cir. 1992); *Vild v. Visconsi,* 956 F.2d 560, 570 (6th Cir. 1992); Gaff v. Federal Deposit Ins. Corp., 814 F.2d 311, 319 (6th Cir. 1987) (reversing district court

---

[11] Similarly, all that plaintiffs have alleged here is a decision by Anthem entities not to continue the agency relationship with plaintiffs, and *perhaps,* although it is not clear, a decision by defendant Cornerstone – an Anthem wholesale agent -- as well.  As *Card* demonstrates, this conduct does not constitute a McCarran boycott.

decision to exercise supplemental jurisdiction over state claim after federal claim was dismissed pursuant to Rule 12(b)(6)).

Here, dismissal of all federal claims is clearly warranted.  The legal insufficiency of plaintiffs' antitrust claim has been exposed early in the proceeding, before this Court has been required to invest any time into resolution of the state claims.  Therefore, the dismissal of the state law claims can be effected without creating any judicial inefficiency.  *Musson Theatrical,* 89 F.3d at 1255 (noting that dismissal of supplemental claims is especially warranted where the dismissal of the federal claims come early in the proceeding).  The state courts are well equipped to address the issues raised in plaintiffs' supplemental claims, and they are the proper forum to hear them.  Thus, no reason exists for this Court to retain plaintiffs' supplemental state law claims.

## IV.    CONCLUSION

For all of the foregoing reasons, Anthem respectfully requests that this Court dismiss plaintiffs' antitrust claim for failure to state a claim and that it decline to exercise supplemental jurisdiction over plaintiffs' pendant state law claims.

Respectfully submitted,


 **s/ Kent A. Britt**
Kent A. Britt (0068182)
VORYS SATER SEYMOUR and PEASE LLP
221 East Fourth Street, Suite 2000
Cincinnati, Ohio 45201-0236
Tel:  (513) 723-4000
Fax:  (513) 852-7818
Email:  kabritt@vssp.com

**Of Counsel**:
James M. Burns (admitted *pro hac vice*)
VORYS SATER SEYMOUR and PEASE LLP
1828 L Street NW, Suite 1100
Washington, DC 20036
Tel:  (202) 467-8878
Fax:  (202) 533-9025
Email:  jmburns@vssp.com

ATTORNEYS FOR ALL OF THE ANTHEM
DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Richard B. Reiling, Esq. and Melanie Frankel, Esq., Ledgestone Professional Center, 66 Remick Blvd., Springboro, Ohio 45066.

s/ Kent A. Britt
Kent A. Britt

20