**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Total Benefits Planning
Agency Inc. *et al.*,

        Plaintiffs

    v.                      Case No. 1:05cv519

Anthem Blue Cross and          Judge Michael R. Barrett
Blue Shield, *et al.*,

        Defendants.


## OPINION AND ORDER

This matter is before the Court upon Defendants Anthem Blue Cross and Blue Shield, Anthem Life Insurance Company, Inc., Anthem Health Plans of Kentucky, Inc. and Anthem Insurance Company, Inc.'s ("Anthem Defendants") Motion to Dismiss (Doc. 3) and Defendant Cornerstone Broker Insurance Services Agency Inc.'s ("Cornerstone") Motion to Dismiss (Doc. 15).  Plaintiffs have filed Memoranda in Opposition to the Motions (Docs. 13, 16) and the Anthem Defendants and Cornerstone has filed Replies (Docs. 14, 17)

## I.  FACTUAL BACKGROUND

Plaintiffs allege violations of the Sherman Antitrust Act, 15 U.S.C. § 1 and the Clayton Act, 15 U.S.C. § 15.[1]  Plaintiffs also allege violations of state law for defamation,

---

[1]Plaintiffs allege a violation of section four of the Clayton Act, which provides:

. . . any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15.

tortuous interference, civil conspiracy, and breach of contract.  Plaintiffs bring these claims against the named Defendants–the Anthem Defendants and Cornerstone–and unnamed Defendants–Jane and John Does–who have participated as co-conspirators.

The following recitation of facts is based on Plaintiffs' Complaint:

Plaintiffs are in the business of selling health and life insurance to individuals and businesses.  (Doc. 1, ¶ 11)  Total Benefits Planning Agency developed a strategy for controlling healthcare costs, which it calls the Total Benefits Strategy.  (Id., ¶ 13)  The Strategy uses "a 51-year old federal tax law to 'refinance' healthcare costs by raising deductibles on existing group insurance policies and administering benefits through a medical expense reimbursement plan."  (Id.)

The Anthem Defendants are insurance companies.  (Id. ¶ 4)  Cornerstone is an insurance agency.  (Id. ¶ 5)  Up until June 3, 2005, Plaintiffs maintained appointments with the Anthem Defendants to sell life and health insurance.  (Id. ¶ 12)  In September of 2004, Plaintiffs were informed that Anthem had concerns that the Total Benefits Strategy was not in the best interests of Anthem or insurance agencies such as Cornerstone.  (Id. ¶ 15)  Anthem threatened to terminate Plaintiffs' appointments if Plaintiffs continued to use the Total Benefits Strategy.  (Id.)  However, Plaintiffs continued to promote the Total Benefits Strategy.  (Id.)

Plaintiff allege that Defendants have taken several actions which make up a continuing agreement, understanding, and concert of action.  (Id. ¶ 17)  Plaintiffs allege that Defendants and their co-conspirators defamed and libeled Plaintiffs to third parties, such as insurance agencies, agents, businesses and consumers.  (Id.)  Plaintiffs allege that Defendants and their co-conspirators stated that the Total Benefits Strategy is

unethical and illegal even though Defendants and their co-conspirators knew this to be untrue.  (Id.)  Plaintiffs allege further that Defendants and their co-conspirators have "coerced and threatened certain insurance agents by threatening to 'blacklist' them and cancel their contracts to insure that these agents do not do business with Plaintiffs."  (Id.) Plaintiffs allege that they have also been coerced and threatened.  (Id.)  Plaintiffs state that Defendants have "'blacklisted' Plaintiffs within the insurance industry and otherwise organized a boycott of Plaintiffs."  (Id.)  Finally, Plaintiffs state that Defendants terminated their appointments and threatened to terminate the appointment of any agent who does business with Plaintiffs.  (Id.)  Plaintiffs allege that as a direct and proximate result of these actions, purchasers of insurance services from Plaintiffs have been deprived of these benefits of free and open competition; Plaintiffs have been restrained in their ability to make these services readily and fully available; and Plaintiffs have been defamed and libeled.  (Id. ¶ 19)  Plaintiffs state that they have suffered a substantial loss of business reputation, opportunity, and income.

The Anthem Defendants and Cornerstone argue that Plaintiffs' antitrust claim under the Sherman Act, 15 U.S.C. § 1, should be dismissed because Plaintiffs have not satisfied the pleading requirements for an antitrust claim.  In the alternative, the Anthem Defendants and Cornerstone argue that even if Plaintiffs have adequately pled an antitrust claim, Plaintiffs' antitrust claim is exempt under the McCarran-Ferguson Act, 15 U.S.C. §§ 1012(b), 1013(b).  The Anthem Defendants and Cornerstone argue further that upon dismissal of Plaintiffs' federal claim, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## II.    ANALYSIS

### A.    Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) requires this Court to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief.  *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir. 1990), *cert. denied*, 498 U.S. 867 (1990). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions."  *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

### B.    Sherman Act

Section 1 of the Sherman Act was enacted to prohibit unreasonable restraints of trade. *Board of Trade of City of Chicago v. United States*, 246 U.S. 231, 238 (1918).  The essential elements of a private antitrust claim under the Act must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on a defendant's 12(b)(6) motion.  *Crane & Shovel Sales Corporation v. Bucyrus-Erie Co.*, 854 F.2d 802, 805 (6th Cir. 1988).

However, this Court must first determine whether Plaintiffs' claims should be analyzed under the *per se* rule or the rule of reason:

> courts must distinguish between some types of unlawful anticompetitive restraints that "have such a clear lack of any redeeming virtue that any restraint of that type is conclusively presumed to be unreasonable," and are therefore *per se* illegal under the antitrust laws, and the far-larger type of restraints that should be analyzed under the "rule of reason approach that permits case-by-case evaluation of their effect on competition."

*Expert Masonry, Inc. v. Boone County, Ky.*, 440 F.3d 336, 342 (6th Cir. 2006), *quoting Bailey's, Inc. v. Windsor America, Inc*., 948 F.2d 1018, 1027 (6th Cir. 1991).

If a practice is illegal *per se*, it is unnecessary to further examine the practice's impact on the market or the procompetitive justifications for the practice. *Expert Masonry*, 440 F.3d at 342. Therefore, when a restraint is found to be proscribed *per se*, the plaintiff need only prove that (1) two or more entities engaged in a conspiracy, combination, or contract; (2) to effect a restraint or combination prohibited *per se* (wherein the anticompetitive effects within a relevant geographic and product market are implied); (3) that was the proximate cause of the plaintiff's antitrust injury. *Id*. (citations omitted)

If a practice is to be analyzed under the rule of reason standard, the plaintiff must prove that (1) that the defendants contracted, combined, or conspired; (2) that the scheme produced anticompetitive effects; (3) that the restraint affected relevant product and geographic markets; (4) that the object of the scheme and the conduct resulting from it was illegal; and (5) that the scheme was a proximate cause of the plaintiff's antitrust injury. *Id.* at 343.

In determining which analysis is to be applied, the Sixth Circuit has instructed that:

it is vital to distinguish between horizontal restraints that involve direct competitors at a given level of the market, and vertical restraints that typically involve entities that are upstream or downstream of one another. Under Section 1 of the Sherman Act, certain horizontal agreements are viewed as especially injurious, and courts therefore bar them *per se*, regardless of any alleged ameliorative rationale. These principally include price-fixing, bid-rigging, market allocation, group boycotts, and certain tying arrangements.

On the other hand, vertical restraints generally represent a less apparent threat to competition, so the Supreme Court has reversed most of its earlier *per se* prohibitions of vertical restraints, determining thereby that the rule of reason should be applied to vertical nonprice restraints, vertical maximum

price fixing, and purely vertical (one buyer and one seller) boycotts.

*Expert Masonry*, 440 F.3d at 344-45 (citations omitted).  Here, Plaintiffs allege that the Anthem Defendants refuse to deal with them.  This restraint can be characterized as a vertical boycott.  However, Plaintiffs have also alleged that the Anthem Defendants have coerced any insurance agent who does business with Plaintiffs.  In *Com-Tel, Inc. v. DuKane*, Corp., the Sixth Circuit found that the *per se* rule was applicable where the manufacturer pressured its dealers to boycott the sale of the manufacturer's sound system to the plaintiff. 669 F.2d 407-408, 412 (6th Cir. 1982).  The court noted:

> Although the primary concern of the antitrust laws is with interbrand competition, intrabrand competition is still a concern, especially in cases such as this where no benefits from increased interbrand competition may or did result from the vertical restrictions.  This arrangement must be viewed as a horizontal attempt to exclude a competitor on the horizontal level and to restrict intrabrand competition without an offsetting benefit to interbrand competition.

*Id.* at 412 (footnotes omitted).  The court found that the *per se* rule applied to group boycotts was applicable because the conduct of the defendants had the same anticompetitive effect that the *per se* rule was intended to proscribe.  Similarly, the Court finds that Plaintiffs allegations are to be analyzed under the *per se* rule.

The Court finds that Plaintiffs have sufficiently alleged a *prima facie* case of each element of the *per se* test.  Plaintiffs allege that the Anthem Defendants, Cornerstone, and their un-named co-conspirators engaged in a conspiracy and combination.  As discussed above, Plaintiffs allege that this conspiracy and combination has resulted in a restraint or combination prohibited *per se*.  Finally, Plaintiffs allege that the conspiracy and

combination was the proximate cause of the plaintiff's antitrust injury.[2]    Therefore, Plaintiffs' Sherman Act claim will not be dismissed based on a failure to state a claim.

### C.    McCarran-Ferguson Act

One of the purposes of the McCarran-Ferguson Act was to grant certain exemptions from antitrust laws to the business of insurance.  *McDiarmid v. Economy Fire & Cas. Co.*, 604 F.Supp. 105, 108 (S.D. Ohio 1984).  There are three prerequisites to exemption from antitrust liability under the McCarran-Ferguson Act: (1) the challenged action must constitute the "business of insurance" within the meaning of Section 2(b) of the Act; (2) must be regulated by state law; and (3) the conduct must not be an "agreement to" or "act of boycott" within the meaning of Section 3(b).[3]  *Nurse Midwifery Associates v. Hibbett*, 549 F.Supp. 1185, 1188 (M.D. Tenn. 1982).

Plaintiffs argue that the McCarran-Ferguson exemption is not applicable because Plaintiffs have alleged that Defendants used boycott and coercion in violation of the Sherman Act.  In *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 544 (1978) the Supreme Court stated that the term "boycott" in Section 3(b) of the McCarran-Ferguson Act should be construed in a manner "consistent with traditional Sherman Act usage," but that the terms "boycott," "coercion," and "intimidation" are not coextensive with the prohibitions of the Sherman Act.  *Id.* at 545 n.18.  The Court noted that legislative history evidenced an intent to prevent insurance companies and agents from "blacklisting" and imposing other

---

[2]Because they are not elements of the per se test, the Court finds it unnecessary to address Defendants' arguments regarding anticompetitive effects the relevant product and geographic markets.

[3]Section 3(b) states: "Nothing contained in this chapter shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation." 15 U.S.C. § 1013(b).

sanctions against uncooperative competitors or agents.  *Id.* at 546, *citing* 91 Cong. Rec. 1087 (1945) (remarks of Rep. Celler) and *id.* at 1485-86 (remarks of Sen. O'Mahoney). Later, in *Hartford Fire Ins. v. California*, the Supreme Court further defined the term "boycott" by explaining that a boycott occurs when, in order to coerce a target into certain terms on one transaction, parties refuse to engage in other, unrelated or collateral transactions with the target.  509 U.S. 764, 801-803 (1993) (explaining that it is "the refusal to deal beyond the targeted transaction that gives great coercive force to a commercial boycott: unrelated transactions are used as leverage to achieve the terms desired.").  As stated above, Plaintiffs have sufficiently alleged a claim under the Sherman Act based on Defendants' group boycott of Plaintiffs.  In addition, Defendants alleged refusal to deal with Plaintiffs--the unrelated transaction--was an effort to stop Plaintiffs from offering the Total Benefits Strategy to consumers--the targeted transaction.  Therefore, the Court finds that Plaintiffs' antitrust claim is not exempted by the McCarran-Ferguson Act, and Plaintiffs claim will not be dismissed on this basis.

**D.**    **Conclusion**

Based on the foregoing, Defendants Anthem Blue Cross and Blue Shield, Anthem Life Insurance Company, Inc., Anthem Health Plans of Kentucky, Inc. and Anthem Insurance Company, Inc.'s ("Anthem Defendants") Motion to Dismiss (Doc. 3) and Defendant Cornerstone Broker Insurance Services Agency Inc.'s ("Cornerstone") Motion to Dismiss (Doc. 15) are hereby **DENIED**.

**IT IS SO ORDERED.**

        */s/ Michael R. Barrett*
        Michael R. Barrett, Judge
        United States District Court