IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TOTAL BENEFITS PLANNING  )
AGENCY, INC. *et al.*  )
            )
    Plaintiffs,  )
            )    Case No. 1:05CV519
v.  )    District Judge Michael R. Barrett
            )
ANTHEM BLUE CROSS AND  )
BLUE SHIELD, *et al.*  )
            )
    Defendants.  )
            )

## <u>DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT</u>

Defendants Anthem Blue Cross and Blue Shield, Anthem Life Insurance Company, Inc., Anthem Health Plans of Kentucky, Inc. and Anthem Insurance Company, Inc. hereby move to dismiss plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim. The grounds for the motion are more fully set forth in the accompanying Memorandum in Support of Motion.

Respectfully submitted,

s/ Glenn V. Whitaker
Glenn V. Whitaker (0018169)
*Trial Attorney*
Kent A. Britt  (0068182)
VORYS SATER SEYMOUR and PEASE LLP
221 East Fourth Street,
Atrium Two, Suite 2000
Cincinnati, Ohio 45201-0236
(513) 723-4488 (Telephone)
(513) 852-7818 (Facsimile)
gvwhitaker@vssp.com
kabritt@vssp.com

**Of Counsel**:
James M. Burns (admitted *pro hac vice*)
VORYS SATER SEYMOUR and PEASE LLP
1828 L Street NW, Suite 1100
Washington, DC 20036
(202) 467-8800 (Telephone)
(202) 533-9025 (Facsimile)
jmburns@vssp.com

ATTORNEYS FOR ALL OF THE ANTHEM
DEFENDANTS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |  |
|---|---|---|
| ———————————————— | ) | |
| TOTAL BENEFITS PLANNING | ) | |
| AGENCY, INC. *et al.* | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | Case No. 1:05CV519 |
| v. | ) | District Judge Michael R. Barrett |
| | ) | |
| ANTHEM BLUE CROSS AND | ) | |
| BLUE SHIELD, *et al.* | ) | |
| | ) | |
|     Defendants. | ) | |
| ———————————————— | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Defendants Anthem Blue Cross and Blue Shield, Anthem Life Insurance Company, Inc.,

Anthem Health Plans of Kentucky, Inc. and Anthem Insurance Company, Inc. (collectively

"Anthem") respectfully submit this Memorandum in Support of their Motion to Dismiss

plaintiffs' Amended Complaint.

### I.       PRELIMINARY STATEMENT

In filing an Amended Complaint while Anthem's Motion for Reconsideration (Doc. 29)

of the Court's September 8 Order is still pending, plaintiffs clearly hope to remedy the defects in

their original Complaint.   Specifically, as Anthem has demonstrated in that motion, because

plaintiffs' original Complaint did *not* adequately allege a *per se* violation of the antitrust laws,

the Complaint was subject to dismissal for failure to plead a rule of reason violation in

accordance with the Sixth Circuit's decision in *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.,*

854 F.2d 802 (6th Cir. 1988).

Recognizing this, and recognizing that the only basis for avoiding dismissal under the *Crane & Shovel* requirements is for plaintiffs to allege a *per se* violation, plaintiffs' Amended Complaint attempts to transform the allegations in their original Complaint into a *per se* antitrust claim.  In pursuit of this objective, plaintiffs add several Cincinnati/Dayton area insurance agencies as new defendants to the case (Am. Comp. ¶¶7-13), under the erroneous assumption that their addition will create the horizontal element necessary for *per se* treatment of plaintiffs' "hub and spoke" conspiracy theory.  However, as explained below, plaintiffs' failure to plead any *facts* concerning how, when, where or why these new defendants "conspired" with Anthem means, simply, that no antitrust conspiracy has been alleged. *See, e.g., Re/Max Intern., Inc. v. Smythe, Cramer Co.,* 265 F.Supp.2d 882, 896 (N.D. Ohio 2003) ("A plaintiff's bare allegation of conspiracy is insufficient to sustain an antitrust claim;" dismissing claim that failed to allege facts detailing the "participants, time, place and effect of the alleged conspiracy.").

Second, plaintiffs attempt to avail themselves of the benefits of *per se* treatment by making passing references to "commissions" and an "illegal price fixing scheme" (Am. Comp. ¶24).  Undoubtedly these modifications to the original Complaint are an effort to suggest that plaintiffs have adequately pled a vertical *price fixing* conspiracy (which, as Anthem explained in its Motion for Reconsideration, is the only ground for  applying *per se* principles to the vertical conspiracy plaintiffs attempted to plead in their original Complaint).  However, like the original Complaint, the Amended Complaint contains no *factual* allegations supporting the conclusory assertion that plaintiffs are the victims of a price fixing conspiracy, and thus this effort by plaintiffs fails as well.

Finally, plaintiffs fail to remedy the deficiencies from their original Complaint with respect to pleading a rule of reason claim under the requirements of *Crane & Shovel*.  For

example, plaintiffs add nothing in their Amended Complaint with respect to the applicable product and geographic markets, nor do they allege how Anthem's termination of its relationships with the defendants has any impact of competition (not surprising, given the many other insurance companies with whom plaintiffs remain free to associate in marketing their "Total Benefits Strategy"). Thus, as explained in detail in Anthem's original motion, these failures constitute well recognized grounds for dismissing plaintiffs' antitrust claim under the rule of reason. *See, e.g., Cupp v. Alberto-Culver USA, Inc.,* 310 F.Supp.2d 963, 969-74 (W.D. Tenn. 2004) (dismissing antitrust claim where plaintiff failed adequately to plead the relevant product and geographic markets); *Dunn & Mavis, Inc. v. Nu-Car Driveway,* 691 F.2d 241, 245 (6th Cir. 1982) ("Since the Complaint does not allege facts suggesting that [defendant's] refusal to deal had any significant anti-competitive effect on the market, there is no rule of reason case alleged.").

Accordingly, for all of these reasons, explained in greater detail below, Anthem respectfully requests that this Court dismiss the antitrust claim in plaintiffs' Amended Complaint, with prejudice, and that the Court decline to exercise supplemental jurisdiction over plaintiffs' pendant state law claims.

## II. PLAINTIFFS' ALLEGATIONS[1]

Plaintiffs are an insurance agency and the insurance agents working in that agency. Am. Comp., ¶15-19. Prior to the termination of their relationships with Anthem in June of 2005, plaintiffs sold Anthem health and life insurance to consumers as agents for Anthem, on terms and conditions authorized by Anthem. Am. Comp. ¶21. Plaintiffs contend that Anthem's severance of the parties' agency relationship, and alleged defamatory statements

---

[1] Anthem accepts the well-pled allegations of plaintiffs' Amended Complaint for purposes of this motion.

about them made by Anthem and the other defendants -- insurance agencies doing business with Anthem -- constitute a conspiracy in restraint of trade, in violation of the federal antitrust laws. Am. Comp., ¶¶20-28.

As alleged in the Amended Complaint, the conduct leading up to plaintiffs' termination began in 2004, when plaintiffs commenced marketing Anthem policies to consumers pursuant to a program that plaintiffs describe as the "Total Benefits Strategy." Am. Comp. ¶22-23. Plaintiffs embarked on this course of action without Anthem's prior approval and, upon learning of plaintiffs' actions, Anthem objected to marketing Anthem products in this way. Am. Comp. ¶24. Specifically, as plaintiffs allege, in September of 2004, Anthem apprised plaintiffs that their "Total Benefits Strategy" was inimical to Anthem's interests, and that it would not permit plaintiffs, or any other Anthem agent, to engage in such practices. Am. Comp. ¶24.

Nevertheless, plaintiffs chose to "continue to promote the Total Benefits Strategy following [the September 2004] meeting" with Anthem. Am. Comp. ¶24. Consequently, in June of 2005, Anthem severed its relationship with plaintiffs. Am. Comp. ¶21. In addition, plaintiffs further allege that Anthem and the other defendants, to gain an alleged "unfair commercial advantage," have "defamed" and "blacklisted" plaintiffs to third parties. Am. Comp.¶26. This action followed.

### III. ARGUMENT

#### A. The Applicable Legal Standard

It is well-settled that a Complaint "must contain either direct or inferential allegations respecting all the material elements" of a claim. *Scheid v.Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988). Where a plaintiff fails to satisfy this requirement, dismissal of the Complaint pursuant to Rule 12(b)(6) is clearly warranted. *Valley Products Co. v. Landmark,* 128

F.3d 398, 400 (6th Cir. 1997) (affirming District Court dismissal of antitrust claim for failure to state a claim); *Cupp v. Alberto-Culver USA, Inc.,* 310 F.Supp.2d 963, 969-74 (W.D. Tenn. 2004) (dismissing antitrust claim where plaintiff failed adequately to plead the relevant product and geographic markets).

It is equally well-settled that a plaintiff cannot satisfy its pleading obligations by asserting mere legal conclusions; to avoid dismissal a plaintiff must allege *facts* supporting its allegations. *Associated General Contractors, Inc. v. California State Council of Carpenters,* 549 U.S. 519, 526 (1983) (Noting that the federal courts must "insist upon some specificity in pleading before allowing a potentially massive [antitrust] conspiracy to proceed"); *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.,* 854 F.2d 802, 805 (6th Cir. 1988) ("The essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal of a complaint on a defendant's 12(b)(6) motion"); *Foundation for Interior Design Educ. Research v. Savannah College of Art & Design,* 244 F.3d 521, 530 (6th Cir. 2001) (The elements of an antitrust claim "must be alleged in more than vague and conclusory terms to prevent dismissal.").

Moreover, the courts have also recognized that when these requirements are not met, "the cost of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery." *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984). *Accord, Foundation for Interior Design Educ. Research v. Savannah College of Art & Design,* 244 F.3d 521, 530 (6th Cir. 2001) (In an antitrust action, "the price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome.").

Applying these well-recognized principles to plaintiffs' Amended Complaint, it is abundantly clear that plaintiffs' antitrust claim (Count I) -- which plaintiffs have now had *two*

attempts to plead -- fails as a matter of law and therefore should be dismissed pursuant to Rule 12(b)(6).

### B. Plaintiff's Antitrust Claim Fails as a Matter of Law

The Supreme Court has repeatedly stated that there is a presumption in favor of applying the rule of reason standard in antitrust cases, and that *per se* principles are to be applied only in limited, exceptional circumstances. *Business Electronics Corp. v. Sharp Electronics,* 485 U.S. 717, 723 (1988) ("Ordinarily, whether particular concerted action violates Section 1 of the Sherman Act is determined through a case-by-case application of the so-called rule of reason"). The extensive briefing in this case concerning the merits of plaintiffs' antitrust claim has provided the Court with abundant authority respecting the limited circumstances in which the *per se* rules are to be applied -- none of which are present here.

As these precedents make clear, only two circumstances can even arguably provide a basis for the application of *per se* principles in this case: (1) if plaintiffs allege a "group boycott" that includes *horizontal* agreements among direct competitors, *see NYNEX Corp. v. Discon, Inc.,* 525 U.S. 128, 136 (1998) ("Precedent limits the *per se* rule in the boycott context to cases involving horizontal agreements among direct competitors"), or (2) if the plaintiffs allege a vertical *price fixing* conspiracy. *Ezzo's Investments, Inc. v. Royal Beauty Supply, Inc.,* 243 F.3d 980, 986-87 (6th Cir. 2001) ("Vertical restraints on trade are examined under the rule of reason analysis unless they include 'some agreement on price or price levels,'" *citing Business Electronics*).

As demonstrated below, the Amended Complaint does *not* adequately plead either a group boycott conspiracy by and among horizontal competitors or a vertical price fixing conspiracy. Accordingly, it is simply not appropriate to apply *per se* principles. Moreover,

8

plaintiffs' failure to remedy the inadequacies in their original Complaint with respect to pleading a rule of reason violation -- something they are incapable of doing while remaining consistent with their Rule 11 obligations -- requires the court to dismiss the antitrust claim in the Amended Complaint as a matter of law.

### 1. Plaintiffs Have Not Pled a *Per se* Violation of the Antitrust Laws

#### a. Plaintiffs' Amended Complaint Does Not Allege the Facts Necessary to Plead a Horizontal Group Boycott

As a consequence of the earlier briefing in this case, plaintiffs know that their original "boycott" claim, which contained no allegations of a *horizontal agreement among direct competitors*, could not justify *per se* treatment.   Plaintiffs' Amended Complaint therefore represents an effort to try to satisfy this requirement.  To that end, plaintiffs add as defendants several previously unnamed insurance agencies with whom Anthem does business.  (Am. Comp. ¶¶7-13).  In short, to use the "hub and spoke" conspiracy references upon which plaintiffs relied in opposing Anthem's Motion for Reconsideration, they have added new "spokes" to their "hub and spoke" allegations.

However, as demonstrated in Anthem's Reply on the Motion for Reconsideration, and as *Toys R Us, Inc. v. FTC,* 221 F.3d 928 (7th Cir. 2000) expressly explains, a "hub and spoke" conspiracy is afforded *per se* treatment *only* if a *horizontal* boycott agreement is also present (thus placing the case squarely within the teaching of *NYNEX*).  *Id.* at 932 (noting that the seven toy manufacturers agreed to join the boycott only "on the condition that their competitors would do the same").  *Accord, Republic Tobacco Co. v. North Atlantic Trading Co.,* 381 F.3d 717, 736 (7th Cir. 2004) (acknowledging that, in *Toys R Us,* "the conspiracy at issue was horizontal," and assessing the case under *per se* principles for that reason, not simply because a "hub and spoke" conspiracy had been alleged); *Elder –Beerman Stores Corp. v. Federated Department Stores,*

459 F.2d 138, 144, 146-47 (6th Cir. 1972) (a "rimless" hub and spoke conspiracy is properly assessed under the rule of reason, not *per se* principles).

Recognizing that the original Complaint contains no such allegations, plaintiffs' Amended Complaint suggests that these new insurance agency defendants joined the alleged conspiracy and participated in "defaming" and "blacklisting" plaintiffs.  (Am. Comp. ¶26.) However, plaintiffs' Amended Complaint adds absolutely no facts whatsoever to support this conclusory allegation; for example, nowhere in the Amended Complaint do plaintiffs allege when these defendants joined the alleged conspiracy, where this was accomplished, by whom, for what purpose, to what end or even to whom they allegedly "defamed" or "blacklisted" plaintiffs.   As such, the allegations fail to state a claim as a matter of law.  *See, e.g., Re/Max Intern., Inc. v. Smythe, Cramer Co.,* 265 F.Supp.2d 882, 896 (N.D. Ohio 2003) ("A plaintiff's bare allegation of conspiracy is insufficient to sustain an antitrust claim;" dismissing claim that failed to allege facts detailing the "participants, time, place and effect of the alleged conspiracy."); *The Estate Construction Company v. Miller & Smith Holding Company, Inc.,* 14 F.3d 213, 221 (4th Cir. 1994) (dismissing antitrust claim where plaintiffs "fail[ed] to provide any factual support for their allegations that a conspiracy existed.  The Complaint contains absolutely no allegations regarding communications, meetings or other means through which one might infer the existence of a conspiracy.  Nor does it provide any 'details of the time, place and alleged effect of the conspiracy'"); *Commonwealth of Pennsylvania v. Pepsico, Inc.*, 836 F.2d 173, 181 (3rd Cir. 1988) (dismissing antitrust claim where plaintiff "did not allege any meetings between [defendants], any communications between them, or any other means by which their alleged conspiracy came about").

In fact, the sole new *factual* support for plaintiffs' antitrust claim is their identification, by name, of the new insurance agency defendants, whom plaintiffs contend took action against plaintiffs at Anthem's request.  These allegations, however, are legally insufficient to state an antitrust claim, much less to permit the application of *per se* principles.  *See Chase v. Northwest Airlines Corp.,* 49 F.Supp.3d 553, 561 (E.D. Mich. 1999) ("The Second Amended Complaint alleges that Northwest unilaterally formulated its refusal to sell policy, and that all travel agents were required to comply.  As such, plaintiff's complaint has failed to plead a legally cognizable conspiracy between Northwest and the non-defendant travel agents"); *Spectators' Comm. Network, Inc. v. Colonial Country Club,* 253 F.3d 215, 225-26 (5th Cir. 2001) ("There is thus evidence of sponsors separately agreeing with the PGA, but no evidence of the competitors agreeing among themselves.  This hub and spoke sort of proof does not establish a horizontal combination . . . [Plaintiff] has therefore failed to establish a horizontal conspiracy subject to the *per se* rule.").

### b.  Plaintiffs' Amended Complaint Fails to Plead a Vertical Price Fixing Conspiracy

Again taking instruction from the prior briefing, plaintiffs also attempt in their Amended Complaint to recast their antitrust claim as a vertical price fixing conspiracy.  *See* Am. Comp. ¶25 ("[i]n an effort to keep commissions and prices in connection with Health Insurance in Indiana, Ohio and Kentucky at their present rates. . . Defendants and co-conspirators have engaged in a combination and conspiracy in unreasonable restraint of trade").  However, this allegation is plainly insufficient to satisfy the Supreme Court's requirement that defendants agree "on specific prices or price levels" to warrant *per se* treatment.  *Business Electronics,* 485 U.S. at 735; *Ezzo's Investments, Inc. v. Royal Beauty Supply, Inc.,* 243 F.3d 980, 986-87 (6th Cir. 2001)

("Vertical restraints on trade are examined under the rule of reason analysis unless they include 'some agreement on price or price levels,'" *citing Business Electronics*).

Reading plaintiffs' allegations most generously, they allege only that they offer a lower price insurance alternative and that, by virtue of Anthem's decision to terminate its relationship with plaintiffs, insurance prices will invariably increase.  In short, they characterize themselves as a proverbial "price cutter," much like the plaintiff in *Business Electronics.*  However, *Business Electronics* makes abundantly clear that alleging prices in the market will invariably be raised or stabilized as a result of the termination of a "price cutter" is *insufficient* as a matter of law to plead an agreement on price or price levels warranting *per se* treatment.  *Business Electronics,* 485 U.S. at 731 ("We do not agree with petitioner's contention that an agreement on the remaining dealer's price or price levels will so often follow from terminating another dealer 'because of its price cutting' that prophylaxis against resale price maintenance warrants the District Court's *per se* rule.").  Instead, as most recently acknowledged in *Hesco Parts LLC v. Ford Motor Co.,* 2006 WL 2734429 (W.D. Ky., Sept. 22, 2006), an *express agreement* between the alleged co-conspirators on price or price levels is required to warrant the application of *per se* principles to a vertical agreement.  *Id.* at *2.

No express agreement on "price or price levels" is pled anywhere in plaintiffs' Amended Complaint.  Similarly absent from the Amended Complaint are allegations concerning the time, place, and manner by which such an agreement was formed and carried out.  Thus, in spite of having two separate opportunities to plead a viable antitrust claim,  Plaintiffs' Amended Complaint contains only the sort of vague and conclusory allegations that courts repeatedly reject as legally insufficient to state a claim.  *Re/Max Intern., Inc. v. Smythe, Cramer Co.,* 265 F.Supp.2d 882, 896 (N.D. Ohio 2003) ("A plaintiff's bare allegation of conspiracy is insufficient

to sustain an antitrust claim;" dismissing claim that failed to allege facts detailing the "participants, time, place and effect of the alleged conspiracy."); *Letica Corp. v. Sweetheart Cup Co.,* 790 F.Supp. 702, 704 (E.D. Mich. 1992) ("[M]ere conclusory allegations couched in factual allegations are not sufficient to state a cause of action, particularly in complex litigation such as alleged violations of the Sherman Act.").

In short, plaintiffs' attempt to dress up the Amended Complaint into a *per se* vertical price fixing conspiracy, like their effort to plead a horizontal group boycott, is plainly inadequate.[2]  Accordingly, plaintiffs' efforts to avoid facing the pleading requirements for a rule of reason violation, clearly set forth by the Sixth Circuit in *Crane & Shovel,* unquestionably fail.

### 2. Plaintiffs Have Not Pled A Rule of Reason Antitrust Violation

Having demonstrated that plaintiffs have not pled a *per se* violation, Anthem now returns to a point that plaintiffs have largely not disputed throughout the course of this proceeding: Plaintiffs cannot satisfy the Sixth Circuit's requirements for pleading a rule of reason violation of Section One of the Sherman Act (15 U.S.C. §1.).

As Anthem demonstrated over a year ago, to state a rule of reason antitrust claim capable of surviving a motion to dismiss, plaintiffs must satisfy the requirements of *Crane & Shovel.*  To do so, they must allege facts demonstrating that "defendants contracted, combined or conspired among each other, that the combination or conspiracy produced adverse, anticompetitive effects within relevant product and geographic markets, that the objects of and conduct pursuant to that contract or conspiracy were illegal and that the plaintiff was injured as a proximate result of that

---

[2] The courts have further recognized that "Occasionally an implausible conclusory allegation may turn out to be true . . . But the discovery process is not available where, at the Complaint stage, a plaintiff has nothing more than unlikely speculations.  While this may mean that a civil plaintiff must do more detective work in advance, the reason is to protect society from the costs of highly unpromising litigation."  *DM Research, Inc. v. College of American Pathologists,* 170 F.3d 53, 56 (1st Cir. 1999).  Here, despite having had over a year to engage in "detective work" to provide *factual support* for their allegations, plaintiffs have come up completely empty, and thus this "highly unpromising litigation" should be dismissed.

conspiracy." *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.,* 854 F.2d 802, 805 (6th Cir. 1988).  Like the original Complaint before it, plaintiffs' Amended Complaint clearly fails to measure up to this standard and therefore should be dismissed on this basis.

<div align="center">

**a. Plaintiffs Have Failed to Plead Adverse, Anticompetitive
Effects Within A Relevant Product and Geographic Market**

</div>

The most glaring deficiency in plaintiffs' Amended Complaint, under the rule of reason, remains plaintiffs' failure to plead an anticompetitive effect within the relevant product and geographic market.   This is an *essential* requirement for maintaining an antitrust claim that plaintiffs have never even tried to satisfy.  *See, e.g., Stratmore v. Goodbody,* 866 F.2d 189, 194 (6th Cir. 1989) ("The starting point [in alleging a Section One violation] is to identify the relevant product and geographic markets").  As the Supreme Court has repeatedly acknowledged, identifying the relevant product and geographic markets in a plaintiff's Complaint is essential because it "enables the court to assess . . . what the area of competition is, and whether the alleged unlawful acts have anticompetitive effects in that market." *See, e.g., Brown Shoe Co. v. United States,* 370 U.S. 294, 324 (1962).

Just as in their original Complaint, plaintiffs allege, without any further specification, that they and defendants (now both Cornerstone and the new defendants) are engaged in "the business of providing Health Insurance and/or Life Insurance Coverage," "within the various states of the United States of America." Am. Comp. ¶20.  This vague and conclusory allegation remains plainly insufficient, since, for example, it is readily apparent that health insurance and life insurance are *not* in the same product market (*i.e.,* one obviously cannot purchase life insurance as an adequate substitute for health insurance). *American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.,*  185 F.3d 606, 622 (6th Cir. 1999) ("The relevant market includes those products or services that are reasonably

<div align="center">14</div>

interchangeable with, as well as identical to, defendant's products"); *Health First, Inc. v. Bronson Methodist Hospital,* 1990-2 Trade Cas. (CCH) ¶69,200 (W.D. Mich. 1990) ("The Amended Complaint contains no allegations that would establish the market share of [defendant] or its competitors in the relevant geographic market.  Furthermore, the plaintiffs have not alleged facts from which one could infer that [defendant] has a substantial percentage of the hospital services market in a carefully defined [geographic] market.  Thus, this allegation on the part of plaintiffs is a mere conclusion and is insufficient to withstand a motion to dismiss.").  As such, plaintiffs' Amended Complaint fails even to come close to satisfying this necessary pleading requirement.  *Accord, Cupp v. Alberto-Culver USA, Inc.,* 310 F.Supp.2d 963, 969-71 (W.D. Tenn. 2004) (dismissing antitrust claim where plaintiff failed adequately to plead the relevant product and geographic markets).

By failing to specifically identify the markets allegedly restrained and the defendants' position in these markets, plaintiffs provide the Court with no possible manner of assessing whether defendants' alleged conduct has caused any adverse competitive effects.  This deficiency constitutes another well recognized basis for dismissal.  *Dunn & Mavis, Inc. v. Nu-Car Driveway,* 691 F.2d 241, 245 (6th Cir. 1982) ("Since the Complaint does not allege facts suggesting that [defendant's] refusal to deal had any significant anti-competitive effect on the market, there is no rule of reason case alleged"); *Ace Beer Distrib., Inc. v. Kohn, Inc.,* 318 F.2d 283, 287 (6th Cir.) (an adverse effect on a plaintiff's business is insufficient to establish an anticompetitive effect, absent proof that such adverse effect also impairs competition in the marketplace as a whole), *cert. denied,* 375 U.S. 922 (1963); *Re/Max Intern., Inc. v. Smythe, Cramer Co.* 265 F.Supp.2d 882, 896, 902 (N.D. Ohio, 2003) (dismissing antitrust claim because plaintiff "does not sufficiently allege anticompetitive effects or injury to the public").

15

Indeed, the courts of this Circuit never hesitate to dismiss similarly-deficient antitrust claims on the same grounds. For example, in *Cupp v. Alberto-Culver USA, Inc.,* 310 F.Supp.2d 963 (W.D. Tenn. 2004), the plaintiff alleged that a decision by a hair care product manufacturer to cease doing business with the plaintiff violated the antitrust laws. Upon examining the plaintiff's allegations, the Court noted that "it is clear that many brands and suppliers of hair care products exist. . . . Without a more specific definition and accounting of the brands and suppliers to be included in the relevant market, the Court cannot determine the boundaries of the market." *Id.* at 971. Lacking this critical information, the Court could not assess whether harm to competition generally, as opposed to mere harm to the plaintiff, had even been alleged, and therefore held that plaintiff's allegations "fail[ed] to state a civil antitrust complaint." *Id.* at 972; *Havoco of America, Ltd. V. Shell Oil Co.,* 626 F.2d 549, 554 (7th Cir. 1980) (The absence of a sufficient allegation of anticompetititive effects in a Sherman Act complaint is *fatal* to the existence of the cause of action") (emphasis added).

Here, because Anthem is the sole insurance company defendant, unless Anthem is the dominant provider in plaintiffs' undefined product and geographic "markets" -- an assertion that plaintiffs *never allege to be the case* -- this Court cannot possibly assess whether plaintiffs' allegations can have any effect on competition. Moreover, had plaintiffs pled *facts* concerning the contours of the insurance markets in which they compete, the insufficiency of their claim would be immediately exposed: The plaintiffs constitute only a handful of more than a *thousand* Anthem agents in the area that are competing with all of Anthem's agents (including, but not limited to, the newly named defendants), as well as the insurance agents of Anthem's many competitors. Thus, the Amended Complaint clearly fails to plead any harm to competition whatsoever at the interbrand level, another fatal flaw in their allegations. *See, e.g., Crane &*

16

*Shovel,* 854 F.2d at 807 ("A complaint charging a restraint of trade . . . must allege anticompetitive effect at the interbrand level to survive a Rule 12(b)(6) motion"). Instead, plaintiffs' allegations make clear that the termination of plaintiffs' relationship with Anthem harms them alone, not the state of competition generally or the public at large. *See, e.g., Ace Beer Distrib., Inc. v. Kohn, Inc.,* 318 F.2d 283, 287 (6th Cir.) (an adverse effect on a plaintiff's business is insufficient to establish an anticompetitive effect absent proof that such adverse effect also impairs competition in the marketplace as a whole), *cert. denied,* 375 U.S. 922 (1963); *Re/Max Intern., Inc. v. Smythe, Cramer Co.* 265 F.Supp.2d 882, 896, 902 (N.D. Ohio, 2003) (dismissing antitrust claim because plaintiff "does not sufficiently allege anticompetitive effects or injury to the public"). *See also Brown Shoe Co. v. United States,* 370 U.S. 294, 320 (1962) (the antitrust laws are designed for "the protection of competition, not competitors").

In sum, plaintiffs' Amended Complaint *still* does not allege the contours of the relevant product and geographic markets at issue *or* that plaintiffs' termination had *any* competitive effect on such markets. Because *all* of these elements are required to state a claim, plaintiffs' Amended Complaint remains insufficient as a matter of law and should be dismissed with prejudice for failure to state a claim.

**C.     The Court Should Decline to Exercise Jurisdiction Over Plaintiffs' Pendant State Law Claims**

The Sixth Circuit has recognized that "[a]fter a Rule 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims." *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1255 (6th Cir. 1998). *Accord Taylor v. First American Bank-Wayne,* 973 F.2d 1284, 1287 (6th Cir. 1992); *Vild v. Visconsi,* 956 F.2d 560, 570 (6th Cir. 1992); *Gaff v. Federal Deposit Ins. Corp.,* 814 F.2d 311, 319 (6th Cir. 1987) (reversing district court

17

decision to exercise supplemental jurisdiction over state claim after federal claim was dismissed pursuant to Rule 12(b)(6)).

Here, dismissing the supplemental claims is clearly warranted.  No discovery has occurred to date on any claim and the Court has not been required to invest time in the resolution of the state claims.  Accordingly, the dismissal of the state law claims can be effected without creating any judicial inefficiency.  *Musson Theatrical,* 89 F.3d at 1255 (noting that dismissal of supplemental claims is especially warranted where the dismissal of the federal claims come early in the proceeding).  The state courts are well equipped to address the issues raised in plaintiffs' supplemental claims, and they are the proper forum to hear them.  Thus, no reason exists for this Court to retain plaintiffs' supplemental state law claims.

## IV.    **CONCLUSION**

For all of the foregoing reasons, Anthem respectfully requests that this Court dismiss the antitrust claim asserted in plaintiffs' Amended Complaint for failure to state a claim and  decline to exercise supplemental jurisdiction over plaintiffs' pendant state law claims.

<div style="margin-left:40%">

Respectfully submitted,

s/ Glenn A. Whitaker
Glenn A. Whitaker (0018169)
    *Trial Attorney*
Kent A. Britt (0068182)
VORYS SATER SEYMOUR and PEASE LLP
221 East Fourth Street, Suite 2000
Cincinnati, Ohio 45201-0236
Tel:  (513) 723-4000
Fax:  (513) 723-4052
gvwhitaker@vssp.com
kabritt@vssp.com

</div>

**Of Counsel**:
James M. Burns (admitted *pro hac vice*)
VORYS SATER SEYMOUR and PEASE LLP
1828 L Street NW, Suite 1100
Washington, DC 20036
Tel:  (202) 467-8878
Fax:  (202) 533-9025
jmburns@vssp.com

ATTORNEYS FOR ALL OF THE ANTHEM
DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for all parties in the proceeding.


s/ Glenn V. Whitaker
Glenn V. Whitaker

19